W E. CLARK & SONS, INC. *v.* Eloise ELLIOTT, Adm'x, Lyons Machinery Co. and Patent Machinery Co. Scaffolding Company

5-5708                                            475 S.W. 2d 514

Opinion delivered January 24, 1972

*House, Holmes & Jewell;* By: *Robert L. Robinson, Jr.,* for appellant.

*Wright, Lindsey & Jennings* and *Barber, Henry, Thurman, McCaskill & Amsler; McMath, Latherman & Woods,* for appellees.

FRANK HOLT, Justice. Appellee Elliott's decedent husband was fatally injured when he fell 9 stories from a swinging-stage scaffold. The scaffold was suspended from the top of a 10-story building by two cables, one on each side of the scaffold, attached to window washer hooks affixed to the top of the building. The accident occurred as a result of a defective eye loop in one of the two cables. The eye loop pulled loose, causing one end of the scaffold to drop and the decedent's fatal fall. Following the accident it was discovered that the defective eye loop was not braided or spliced back into the cable itself. It was wrapped with wire and underneath the wire was a tight-fitting metal thimble. The outside wire wrapping and the metal thimble obscured the fact that the eye loop was not properly spliced. The eye loop on the other cable was properly spliced.

Appellee Elliott's decedent was the employee of E. M. Bush, the general contractor in the construction of the new highway department building. The scaffold was owned by appellant Clark, a subcontractor on this project. Appellee Patent Scaffolding Company manufactured the scaffold and appellee Lyons Machinery Company, Patent's distributor in this area, sold the scaffold in 1954 to appellant Clark. The general contractor, Bush, and the subcontractor, Clark, sometimes swapped equipment. Clark loaned this scaffold to Bush in October 1965 and Bush had possession of it from that date until March 1966 when the fatal accident occurred.

Appellee Elliott sued Clark, the owner of the scaffold, on the theory of negligent repair and negligent

inspection before lending the scaffold to Bush. Elliott sued Patent, the manufacturer, on the accusations of negligent design, selection of materials, assembly, construction, inspection, and testing of the scaffold. Appellee Lyons, the local distributor, was made a defendant on the theory of negligent repair. Each of the appellees denied the allegations of negligence, pleading various defenses. Patent specifically denied that it furnished this particular cable.

This case was before us in *Elliott* v. *Clark & Sons*, 247 Ark. 651, 447 S. W. 2d 129 (1969) in which we reversed a summary judgment rendered in favor of Clark and remanded the issue for trial, holding that a jury question existed as to Elliott's claim against Clark. A comprehensive recitation of the facts is found in that opinion. Upon a retrial, the trial court directed verdicts for appellees Lyons and Patent. The jury awarded $52,-773 to appellee Elliott against appellant Clark. For reversal of that judgment as to Lyons and Patent, from which appellant seeks contribution, appellant first contends that the trial court erred in granting their motions for directed verdicts. We cannot agree with this contention.

Appellant Clark, owner of the scaffold manufactured by Patent in 1954, had purchased it from appellee Lyons, Patent's exclusive distributor in Arkansas for the past 20 years. It appears that appellant had purchased about 16 Patent scaffold drums from Lyons during these years, including this one about or sometime after 1954; Clark's employees were instructed not to try to make cable repairs and, further, to return them to Lyons for that purpose; Clark returned to Lyons some of these 16 drums for repairs and cable lengthening; there was no evidence that this particular scaffold drum or cable was ever returned to Lyons for replacement or repair work; the evidence is undisputed that Lyons never attempted to make repairs and if such were requested, the drums or cables would be forwarded to Patent; the cable with the defective eye loop was manufactured by United States Steel from which Patent never purchased its cable; the

properly spliced companion cable on the scaffold was different, however, this cable was of the type furnished by Patent; the cable with the defective eye loop was a completely different type than that ever used by Patent; the wire wrapping around the unspliced cable was a 16-gauge reinforcing tie wire and not a 14-gauge galvanized wire which was used by Patent; the wrapping wire around the defective eye loop was a type of wire commonly used around construction sites and the type wire used to tie reinforcing steel; appellant Clark had loaned its scaffolding equipment to other contractors throughout the state; the thimble underneath the wire wrapping on the defective eye loop on this completely different type cable was somewhat similar in a marking to the ones produced by one of Patent's suppliers and yet the thimble was much smaller in size than the type used by Patent; iron workers on construction jobs are familier with eye loops in these cables and it is not uncommon for them to make eye loop splices on the job since no particular equipment is necessary; Bush's job superintendent testified that he personally inspected this particular defective eye loop when the scaffold was loaned to them by the appellant and the eye of each of the two cables looked alike; the wire wrapping around the defective eye loop was dirty and any defect was not visible; that the eye loop was in substantially the same condition when it was borrowed as when it caused the accident four months later; and, further, that neither he nor any of his employees attempted to repair or fabricate the defective eye loop.

Appellant, in effect, argues that by directing verdicts for Patent and Lyons the jury was prevented from considering inferences from the proof as to possible negligent manufacturing of the defective eye loop by Patent or someone on its behalf, or the possible negligent repair or inspection by either or both Patent and Lyons. In *Kapp* v. *Sullivan Chevrolet Co.*, 234 Ark. 395, 353 S. W. 2d 5 (1962) we aptly said:

"* * * Appellants' entire case rests upon conjecture and speculation. Several *possible* causes of the break

are argued, but in truth, they are only *possibilities,* and do not reach the status of probabilities. Negligence cannot be established by guesswork."

In the case at bar we think the trial court correctly directed a verdict in favor of appellees Lyons and Patent. The burden was upon appellant Clark to produce some substantial evidence to support its contention for contribution from these appellees. We cannot say that the most favorable inferences deducible from the evidence meet the substantial evidence test inasmuch as the jury would have for consideration only a choice of possibilities.

Appellant next contends for reversal that the trial court erred in giving appellee Elliott's requested Instruction No. 15. Appellant does not object to the form of the instruction which is AMI 2215. However, appellant argues that the element of "pecuniary injuries", as to "what the deceased earned and what he might reasonably have been expected to earn in the future", is not supported by the testimony. There was evidence that appellee's decedent husband earned approximately $3.98 per hour, producing an income between $5,000 and $6,000 the year preceding his death. Decedent also received a $60 per month pension as a disabled war veteran. A fellow worker testified that an iron worker who was making $5,000 to $6,000 when the decedent was fatally injured would now have an approximate earning capacity of $10,000 per year. At the time of his demise he was 47 years of age and had 17 years experience as an iron worker. Most of his income was contributed to the maintenance of his family. In *Missouri Pacific Trans. Co.* v. *Simon,* 199 Ark. 289, 135 S. W. 2d 336 (1939) we said:

> "No rule has been established—and in the nature of things none can be—for determining what compensation should be paid for loss of life, for pain and suffering, for loss or decrease of earning power, for mental anguish accompanied by physical injury, for loss of companionship, and for the various elements entering into damage actions."

We think there is substantial evidence to support the element of damages as to the aspect of "pecuniary injuries."

Appellant also asserts that the evidence is insufficient to justify $1,273 as funeral expenses awarded by the jury on behalf of the estate. In this respect there is no competent evidence to support an award in excess of $500. To that extent we agree with the appellant and accordingly reduce the judgment.

Appellant next asserts that the trial court erred in admitting, over appellant's objection, incompetent opinion testimony. Appellant contends that it was prejudicial error for the court to permit a witness, William L. Porter, to respond as follows:

Q. If you had inspected this particular eye loop involved here would you have been able to determine as a qualified rigger that it was not properly fabricated?

A. Yes, sir, I believe I would have.

This witness possessed special qualifications and skill with respect to cables and scaffolds. He had served an apprenticeship for three years and was an instructor on this subject for the Little Rock Vocational School for four years. In our view this witness possessed an expertise on this subject of cable splicing and rigging which was not within the ken or purview of the average juror, four of whom were women. To this jury he demonstrated with cables and wrappings the proper and improper method of making eye loops. The court did not abuse its discretion in permitting this testimony. See *Jones* v. *Turner*, 244 Ark. 603, 426 S. W. 2d 401 (1968); *Arkansas Power & Light Co.* v. *Morris*, 221 Ark. 576, 254 S. W. 2d 684 (1953); *Lee* v. *Crittenden County*, 216 Ark. 480, 226 S. W. 2d 79 (1950); and McCormick, Law of Evidence § 13.

The judgment is affirmed with the modification as previously indicated.

Affirmed as modified.