Vivian HAY et al *v.* Joe SCOTT and Rita SCOTT, d/b/a/ THE WISHING WELL

82-52                                                    631 S.W.2d 841

Supreme Court of Arkansas
Opinion delivered May 3, 1982

*Laser, Sharp, Haley, Young & Huckabay, P.A.*, for appellants.

*John Harris Jones* of *Jones & Petty*, for appellee.

JOHN I. PURTLE, Justice. A trial court jury found against the appellants' claim that an overloaded extension cord caused a fire which damaged a business known as The Wishing Well and spread to businesses known as The Gift Box, B G's Fashions, Inc., The Frame House and Mike R. Lawyer. Apparently, other businesses located in the East Plaza Shopping Center, in the vicinity of the Wishing Well, filed suits against the appellees. All suits were consolidated for trial.

On appeal it is argued: (1) the trial court erred in failing to strike the testimony of Joe Scott as to the electrical origin of the fire because he was not qualified as an expert in electricity nor fire causation and that there was no foundation for his testimony; (2) the trial court erred in allowing the testimony of Homer Justice for the same reasons set out in point one above; (3) the trial court erred in admitting certain photographs into the record; and, (4) the trial court erred in failing to allow appellants' expert witnesses to testify as to the appellees' exercise of reasonable care. We do not agree with the appellants on any of the four points argued for reversal.

A fire originated in the business known as The Wishing Well and spread to adjacent businesses. The other tenants in

the shopping center adjacent to appellees' business filed a complaint alleging the appellees negligently caused the fire resulting in damage to their property. The primary issue in the court below was whether the appellees negligently selected and used an inadequate extension cord which caused the fire.

We will first deal with the argument that appellees' witnesses, Joe Scott and Homer Justice, were not qualified to testify on the subject matter. Mr. Homer Justice testified that he had been an active electrician for more than 40 years, and that he was presently a licensed master electrician and had been so licensed for 15 to 20 years. Some of the jobs that he had worked on as an electrical supervisor or contractor were Simmons Bank, National Bank, Woolworth, Southern Federal, Pinecrest Cotton Mill, Hudson Pulp, Weyerhaeuser, and various schools in the Pine Bluff area. He further testified that he graduated from an electrical school in Chicago in 1939. Following graduation he wired R.E.A. houses, Jacksonville Ordinance Plant, Pine Bluff Arsenal, Ford Leonardwood, Missouri, and Camp Walters, Texas. He also testified he operated his own company for eight or nine years. Before that he was employed by A & M Electric and Fagan Electric. His duties generally included being in charge of electrical installation in the buildings being constructed.

Joe Scott was vice-president of Pine Bluff Heating and Air Conditioning, having been in the heating and air conditioning business about 20 years. Mr. Scott attended a vo-tech school and received electrical refrigeration training. Some of the heating and air conditioning installations that he supervised in the Pine Bluff area were Simmons Bank, Simmons East, many branch banks in Pine Bluff, NBC at Broadmoor, Broadmoor Theaters, five White Hall schools and four schools in Dumas, plus a number of apartments in Little Rock and the Four-H building in Ferndale. He estimated that 90% of the knowledge required for heating and air conditioning was electrical knowledge. He stated that he had an appliance license to do internal wiring, including high voltage 440 and whatever might be in the appliance to the point of the receptacle. Primarily his work

commenced at the receptacle and extended to the various appliances.

In *Dixon* v. *State,* 268 Ark. 471, 597 S.W.2d 77 (1980), we stated:

> It is well-settled that the determination of the qualifications of an expert witness lies within the discretion of the trial court, and his decision will not be reversed unless that discretion has been abused.

Uniform Rules of Evidence, Rule 702, in regard to expert testimony, states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Rule 704 in regard to opinions on the ultimate issues, states:

> Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

Rule 705 in regard to disclosure of facts or data underlying the expert opinion, states:

> The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination.

Considering the above rules of evidence and the case quoted, it is obvious that the judge properly exercised judicial discretion in allowing these witnesses to testify as they did. Also, we think he properly refused the appellants'

request to strike the testimony for the reason that these two witnesses were not qualified to testify about the matters under consideration.

The appellants also argue the court erred in allowing certain photographs to be introduced. Neither the maker of the photographs nor the person who had placed two red arrows on them were present or testified. The photographs were admitted on the basis of the testimony of Rita Scott that the photographs were an accurate representation of what The Wishing Well looked like on July 30, 1979, the day after the fire. The two arrows on the photographs objected to were marked in red and pointed to the receptacle area where the extension cord had plugged into the wall. In *Higdon* v. *State,* 213 Ark. 881, 213 S.W.2d 621 (1948), we stated:

> The admission and relevancy and materiality of photographs is left to the discretion of the trial judge . . .

In *McGeorge Construction Co.* v. *Mizell,* 216 Ark. 509, 226 S.W.2d 566 (1950), we held that the validity of photographs introduced into evidence was not objectionable merely because the witness did not take the pictures and was not present when they were taken. We stated that the test of whether photographs are admissible into evidence depends on the fairness and correctness of the portrayal of the subject. We also stated in *McGeorge* that the admissibility of photographs addresses itself to the sound discretion of the trial judge. We will not disturb such a ruling unless there is an abuse of discretion.

Appellants have failed to show that the photographs were misleading or prejudicial in any manner. In fact, it is obvious that they would be an aid to the jury in understanding much of the testimony presented to them. The red arrows simply point to the area where all witnesses agree the fire originated. The expert witnesses for appellees essentially testified that the fire started in the receptacle and the expert witnesses for the appellants testified the fire originated in the extension cord near the receptacle where it plugged into the wall. Therefore, we think the court did not

abuse its discretion in allowing the photographs to be introduced into evidence.

Finally, the appellants argue it was error for the court to refuse to allow their expert witnesses to testify that appellees did not use reasonable and ordinary care in using the extension cord to operate the refrigerator and coffee pot. The testimony was proffered and appears to be proper. As stated in Rule 704 expert testimony is not objectionable because it embraces an ultimate issue to be decided by the trier of fact. Immediately after the proffer of this evidence in chambers the appellants' witness, Charles McKenny, took the stand and testified to the following as abstracted by appellants:

> My opinion that the use of this extension cord was not reasonable or proper was based on the statements I read in the reports and everything. ... that gives me reason to believe that they weren't exercising a due amount of care on it. I don't know what had happened to the refrigerator before or what happened to it at this time. I'm saying that the fire started at the end of the cord by that shelf from overheating caused by an excessive pull of current. *** In my opinion, the cause of the fire was overloading of that cord.

The other expert witness after proffering his testimony testified before the jury as follows, according to appellants' abstract:

> In my opinion, the fire began on the white extension cord, 18 gauge, and overheated to the point it fed across and then fed into the board or paneling on the east side, and from there fed up and outward. *** It was heated from an internal to an outward point. *** I am satisfied that the fire started along the extension cord along the storage shelves at the receptacle area for two reasons. One is that the "V" point showed that as the point of origin. The fact that the extension cord in my opinion was burned from the inside out is important. *** I am both master electrician and the Chief of the Pine Bluff

Fire Department . . . some or all of the acts of Rita Scott just listed were a cause of the fire.

We think any possible error was cured by the skill of the appellants' attorneys in obtaining exactly the same evidence in subsequent testimony by these witnesses. Therefore, we do not feel there was prejudicial error in the rejection of the proffered testimony.

Affirmed.