Thomas A. DILDINE and Gerene L. DILDINE
*v.* CLARK EQUIPMENT CO., a Foreign Corp., and
TOWN AND COUNTRY INTERNATIONAL, INC.

83-278                                          666 S.W.2d 692

Supreme Court of Arkansas
Opinion delivered March 26, 1984

132

*Larry J. Steele,* for appellants.

*Barrett, Wheatley, Smith & Deacon,* for appellee Clark Equipment Company.

*Penix, Penix, Mixon & Lusby,* for appellee Town & Country International, Inc.

STEELE HAYS, Justice. This is a product liability case against a manufacturer and its distributor. The questions on appeal are whether the trial court was correct in excluding testimony of an expert witness for the plaintiff on the issue of liability, and in granting defense motions for a directed verdict. We think the court erred in part in these rulings.

Thomas Dildine, the appellant, began working for Tenco, Inc., a feed and grain supplier, in January, 1982. The work included operating a front-end loader known as a "632 Bobcat", which Dildine used to load cattle feed into a mixing bin. The Bobcat was a manufactured product of appellee, Clark Equipment Company, Inc., and was distributed by appellee, Town and Country International, Inc.

In March, 1982 while Dildine was mixing feed at the Tenco plant he was thrown from the Bobcat sustaining the injuries complained of. He described the incident as occurring while he was using the Bobcat to load feed into the mixing bin. With a load of feed in the bucket of the Bobcat, he drove toward the bin with the bucket in a lowered position, according to instructions. As he neared the bin he began to elevate the bucket and the Bobcat suddenly tipped forward throwing him out of the machine with the resulting injuries.

Suit was filed against Clark and Town and Country on allegations of strict liability, breach of express and implied warranties of fitness and merchantability, and negligence in construction, design, and failure to warn in the operation of the machine. Thomas Dildine's wife joined in the suit based on a loss of consortium and Tenco's workers compensation carrier intervened to enforce its subrogation rights.

At trial, Dildine called Dr. Albert Mink to testify as an expert relative to the Bobcat. The court sustained repeated objections to Dr. Mink's testimony to the end that he was permitted to state only that in his opinion the warnings were inadequate, the bulk of his testimony being excluded. It appears in the record by way of proffer. At the close of the plaintiff's case defendants moved for directed verdicts which the court took under advisement. After the defendants had presented proof the motions were renewed and were sustained.

Appellant assigns as error that the motions for a directed verdict should have been denied and the trial court abused its discretion in refusing to qualify Dr. Mink as an expert. We sustain the arguments as to Clark Equipment Company but not as to Town and Country International.

Before considering whether directed verdicts were warranted, we examine the issue concerning Dildine's product expert, Dr. Albert Mink. This court has held a great many times that whether a witness may give expert testimony rests largely within the sound discretion of the trial court and will not be reversed unless an abuse of discretion is found. *Firestone* v. *Little*, 276 Ark. 511, 639 S.W.2d 726 (1982); *Arkansas Land and Cattle Co.* v. *Anderson-Tully Co.*, 248 Ark. 495, 452 S.W.2d 632 (1970); *Ratton* v. *Busby*, 230 Ark. 667, 326 S.W.2d 889 (1959); *AP&L* v. *Morris*, 221 Ark. 576, 254 S.W.2d 684 (1953).

Obviously this case required expert testimony. There is no suggestion that the dynamics of this accident were explainable in lay terms: Uniform Rules of Evidence, 702, states that when that is so, one who is qualified by knowledge, skill, experience, training or education, may

testify "in the form of an opinion or otherwise". It seems fair to say that Dr. Mink possessed significant experience and training in the field of mechanical engineering and in the absence of some showing as to why his background was insufficient to qualify him in this case as an expert, we can find no credible reason why he should not have been permitted to give his opinion. He held a Ph.D. degree, a masters degree in machinery design, and was Chairman of the Engineering Department at Arkansas State University. He had been associated with ASU for nearly twenty years. He was then teaching machinery design, was otherwise experienced in machinery design, and professed to have a general and working knowledge of agricultural machinery. He had examined the 632 Bobcat on which Dildine was injured as well as other 632 Bobcats and had driven other models of the Bobcat, though not a 632. He had performed tests on the machine, had talked to other operators and had done a standard search on what standards were applicable to the Bobcat. He had computed the bulk density of the material Dildine was loading at the time of injury. He had studied the owners manual of the Clark Bobcat, as well as the handbook for operating the Bobcat, a safety manual, and a document of the Agricultural American Society of Agricultural Engineering Standard AS 318.6, entitled "Safety for Agricultural Equipment." In short, his credentials to give an expert opinion in the context of this case are beyond serious question. Certainly evidence to the contrary was not offered. Dr. Mink did admit to not having a lot of industrial experience in machine design, but he clearly considered himself qualified to give opinions in the case, saying "I am well aware of the fundamentals of machine design." Besides, the norm of our cases does not suggest that absolute expertise is required — a review of the many cases on point shows a decided tendency to permit the jury to hear the testimony of persons having superior knowledge in a given field, unless clearly lacking in either training or experience. See, for example, *Hay* v. *Scott,* 276 Ark. 46, 631 S.W.2d 841 (1982); *Clark & Sons* v. *Elliott, Adm.,* 251 Ark. 853, 475 S.W.2d 514 (1972); *M. A. Smith* v. *State,* 243 Ark. 12, 418 S.W.2d 627 (1967); *Ray* v. *Fletcher,* 244 Ark. 74, 78, 423 S.W.2d 865 (1968); *Ratton* v. *Busby,* 230 Ark. 667, 326 S.W.2d 889 (1959).

Some interest was shown in the trial proceedings in the fact that Dr. Mink had not driven this particular Bobcat because it was disassembled when he was called to examine it. But he had driven other Bobcats and no reason was offered to the trial court, nor to us, as to why that single fact should have disqualified him altogether. We have held that a witness who had never seen emergency and hydraulic brakes tested on a large bus was nevertheless qualified to give his opinion as to what the effects would be. *Roark Transportation Inc.* v. *Sneed,* 188 Ark. 928, 68 S.W.2d 996 (1934). Appellees cite generally, *Firestone* v. *Little,* 276 Ark. 511, 639 S.W.2d 726 (1982), however, it might be noted that in *Firestone,* a California engineer called as an expert was permitted to testify "extensively," the single issue on appeal being whether he should have been permitted to testify as to the accident rate associated with a particular type of truck wheel (the RH5°) as compared to the accidents of another sort. In contrast to the case before us, Dr. Mink was hardly permitted to testify at all as to liability.

Obviously no firm rule can be derived which would serve uniformly as a means of measuring the qualifications of an expert, but the tone of our cases suggests that too rigid a standard should be avoided and if some reasonable basis exists from which it can be said the witness has knowledge of the subject beyond that of persons of ordinary knowledge, his evidence is admissible. *Roark Transportation* v. *Sneed, supra; Blanton* v. *Mo. Pac. Rd. Co.,* 182 Ark. 543, 31 S.W.2d 947 (1930). In *Firemen's Insurance Co.* v. *Little,* 189 Ark. 640, 74 S.W.2d 777 (1934) we approved the following language:

A skilled witness is one possessing, in regard to a particular subject or department of human activity knowledge and experience which are not acquired by ordinary persons. Where he testifies as to facts, he must be shown to have adequate knowledge of the matters of which he speaks, and where he states an inference he must have the ability, skill, and experience, not only to observe accurately, but to draw the correct conclusion from what he observes. Such a witness may be qualified by professional, scientific, or technical training, or by practical experience in some field of activity conferring

on him special knowledge not shared by mankind in general, the rule in this respect being that one who had been engaged for a reasonable time in a particular profession, trade, or calling, will be assumed to have the ordinary knowledge common to persons so engaged.

We find no rational reason why the head of the Engineering Department of a major institution of the State with a masters degree in mechanical design, as well as other qualifications, would not have knowledge relevant to the performance of this machine beyond that of the average individual and, thus, capable of rendering an opinion which might be helpful, depending on how probative the jury found it to be. Without suggesting that every question posed to Dr. Mink must be allowed on remand, we believe the court effectively disqualified him from giving evidence as an expert which he was qualified to give.

With respect to the remaining issue, the rule for the review of motions for directed verdicts is quite familiar — the evidence is viewed most favorably to the party against whom the verdict is directed, including all inferences favorable to him, and if any substantial evidence exists which tends to establish an issue in favor of that party, it is error for the court to take the case from the jury. *Farm Bureau Mutual Insurance Co.* v. *Parks,* 266 Ark. 454, 585 S.W.2d 936 (1979); *Page* v. *Boyd-Bilt, Inc.,* 246 Ark. 352, 438 S.W.2d 307 (1969); *Ray* v. *Fletcher,* 244 Ark. 74, 423 S.W.2d 865 (1968).

Dr. Mink told the jury that in his opinion the warnings as to the operation of the Bobcat were inadequate. Additionally, had he been permitted to state other views he would have testified that the machine had a loss of stability when it was loaded, that directional leaders, by which the machine was controlled, did not always return to the neutral position when released and the driver's ability to guide the machine was impaired by being tossed around in the machine. These factors, he believed, directly contributed to appellant's being thrown from the machine. That testimony, if admitted and believed, certainly would have tended to establish the issues of strict liability and negligence in design and it was error for

the court not to submit the case to the jury on the basis of the actual and proffered evidence.

Clark argues that strict liability on its part was absolved by virtue of Tenco having installed modifications to the Bobcat by welding a metal piece to the bucket to permit a larger load and by adding a compensating weight to the rear of the machine. But the effect of that admitted alteration is not undisputed, as Dr. Mink testified, or would have, that this change did not result in the bucket load exceeding the rated capabilities of the Bobcat.

We agree with counsel for Town and Country that no evidence was introduced or tendered on which to predicate liability by Town and Country. Dildine relies on the principle that one who puts out a product as his own which is manufactured by another is subject to the same liability as the manufacturer. This doctrine was followed in *Chapman Chemical Company* v. *Taylor*, 215 Ark. 630, 222 S.W.2d 820 (1949) and is stated and analyzed in Restatement of Torts, 2d, § 400, p. 339. The argument overlooks the fact that here there is no proof that the 632 Bobcat was distributed by Town and Country as its own product. The owners manual, the warranty, the operators handbook, a document called "Delivery Inspection", perhaps the machine itself, all show the Bobcat to be the product of Clark Equipment Company. In *Chapman*, all indications are the Chapman Chemical Company was the distributor of the chemical dust 2-4-D, produced by another company but put out by the Chapman Chemical Company either under its own label, or un-labelled, but in any event as its own product. That is not the situation with respect to Town and Country. Nor do we find evidence which would sustain a finding that Town and Country knew or had reason to know the 632 Bobcat was likely to be dangerous when used in the manner intended. See Restatement of Torts, 2d, § 388.

The judgment is affirmed as to Town and Country International, Inc., and reversed and remanded as to Clark Equipment Company, Inc.