David Ashley DURHAM and Ruthie Mae Durham, Co-Administrators of the Estate of Amanda Lynn Durham, Deceased *v.* Harold MARBERRY and Advantage Mobile Homes, Inc.

03-874                                          156 S.W.3d 242

Supreme Court of Arkansas
Opinion delivered March 25, 2004

*John F. Gibson, Jr.*, for appellant.

*Barrett & Deacon, P.A.*, by: *D.P. Marshall, Jr., Kevin W. Cole*, and *Leigh M. Chiles*, for appellees.

ANNABELLE CLINTON IMBER, Justice. This case arises out of a lawsuit that includes both wrongful death and survival claims. The appellants, co-administrators of the estate of Amanda Lynn Durham, sued appellees Harold D. Marberry and Advantage Mobile Homes, Inc., for damages incurred when a mobile home transport vehicle collided with the vehicle driven by Miss Durham. It is undisputed that Miss Durham was killed instantly in the accident. The trial court granted partial summary judgment to the appellees with regard to claimed "loss of life" damages, finding that at least some period of life between injury and death is a condition for recovery of loss-of-life damages by a decedent's estate. Pursuant to Arkansas Rule of Civil Procedure 54(b), the trial court then certified its order regarding the loss-of-life damages claim as final for purposes of appeal. The appellants contend on appeal that no period of life between injury and death is required to recover loss-of-life damages. We agree with the appellants and reverse.

As a point of order, we note that both the appellants and the appellees have provided notice to this court that they have arrived at a contingent high-low settlement agreement. The settlement amount is contingent upon our decision in this appeal; therefore, we agree with both parties that the contingent agreement does not moot this appeal. Because this appeal involves the construction of a statute and is an issue of first impression before this court, we have jurisdiction pursuant to Ark. Sup. Ct. R. 1-2(b)(1) and (6).

### Constitutionality Issue

In the hearing below, the appellees contended that the appellants' interpretation of § 16-62-101(b), if held to be the correct interpretation, would result in an unconstitutional provision for a punitive penalty without due process and would render the statute unconstitutionally vague. On appeal, the appellees limit their constitutional argument to one sentence: "The Circuit Court did not hold the statute unconstitutional, and [the appellees] make no argument that the statute is unconstitutional, if read correctly." The appellees have abandoned their constitutional argument on appeal; therefore, we do not address it.

### Interpretation of Ark. Code Ann. § 16-62-101(b)

The Arkansas survival statute provides for the recovery of loss-of-life damages and reads as follows:

16-62-101 Survival of actions — Wrongs to person or property.

(a)(1) For wrongs done to the person or property of another, an action may be maintained against a wrongdoer, and the action may be brought by the person injured or, after his or her death, by his or her executor or administrator against the wrongdoer or, after the death of the wrongdoer, against the executor or administrator of the wrongdoer, in the same manner and with like effect in all respects as actions founded on contracts.

(2) Nothing in subdivision (a)(1) of this section shall be so construed as to extend its provisions to actions of slander or libel.

(b) *In addition to all other elements of damages provided by law, a decedent's estate may recover for the decedent's loss of life as an independent element of damages.*

Ark. Code Ann. § 16-62-101 (Supp. 2003) (emphasis added). The issue in this appeal is the interpretation of subsection (b), which was added by the Arkansas General Assembly in Act 1516 of 2001. As we stated in *City of Maumelle v. Jeffrey Sand Co.*, 353 Ark. 686, 120 S.W.3d 55 (2003):

> We review issues of statutory interpretation *de novo* because it is for this court to decide what a statute means. *Reding v. Wagner*, 350 Ark. 322, 86 S.W.3d 386 (2002). The purpose of statutory construction is to give effect to the intent of the General Assembly. *Williams v. Little Rock School District*, 347 Ark. 637, 66 S.W.3d 590 (2002). In doing so, we give the words of the statute their ordinary and usually accepted meaning in common language. *Id.* If the language of a statute is clear and unambiguous and conveys a clear and definite meaning, it is unnecessary to resort to the rules of statutory interpretation. *Id.*

*City of Maumelle v. Jeffrey Sand Co.*, 353 Ark. at 691, 120 S.W.3d at 57.

■ Prior to the passage of Act 1516 of 2001, Arkansas had no statutory provision for loss-of-life damages, nor was there any such provision in our case law. Historically, damages recovered by a decedent's estate under the survival statute, with the exception of funeral expenses, compensated the decedent and were incurred pre-death. These include damages for medical expenses due to the injury, lost wages between injury and death, pain and suffering,

etc. *See, e.g., Advocat, Inc. v. Sauer*, 353 Ark. 29, 111 S.W.3d 346 (2003); *New Prospect Drilling Co. v. First Commercial Trust, N.A.*, 332 Ark. 466, 966 S.W.2d 233 (1998). The appellees argued below that the General Assembly's amendment did not add a new element of damages, and that loss-of-life damages are merely a type of pain and suffering. However, subsection (b) states that loss-of-life damages are "in addition to all other elements of damages provided by law." Therefore, logically, they must be new, because the phrase "all other elements of damages provided by law" would encompass every element of damages — including pain and suffering — that was already recoverable under both statutory and case law. Indeed, the Arkansas Model Jury Instructions—Civil were re-written to include loss of life as a separate element of damages recoverable by an estate in a wrongful death action. *See* AMI Civ. 4th 2216 (2004).

On appeal, the appellees concede that loss-of-life damages are a new element of damages, but they now argue that damages for loss of life are the equivalent of, and synonymous with, damages for the loss of enjoyment of life, and these types of damages are incurred pre-death and require a period of conscious life between injury and death.

There is some confusion amongst both case law and legal scholarship as to the definition of "loss of enjoyment of life" damages. Some cases and scholars have used the term "loss of enjoyment of life" to describe damages that compensate a pre-death loss of the ability to enjoy life's activities while still living.[1] Still others have used this term to mean the loss of the enjoyment of being alive that is incurred at the point of death forward.[2] So the term "loss of enjoyment of life" is confusing and, at times, has been used in a way that is equivalent to "loss of life."

---

[1] *See, e.g., Kirk v. Washington State Univ.*, 746 P.2d 285 (Wash. 1987); Virginia Smith Gautier, *Hedonic Damages: A Variation in Paths, the Questionable Expert and a Recommendation for Clarity in Mississippi*, 65 Miss. L.J. 735 (1996).

[2] *See, e.g., Katsetos v. Nolan*, 368 A.2d 172 (Conn. 1976) (a plaintiff is entitled to "just damages" which include "compensation for the destruction of her capacity to carry on and *enjoy life's activities* in a way she would have done *had she lived*" (emphasis added)); Jennifer L. Jones, *Hedonic Damages: Above and Beyond Section 1983*, 31 Santa Clara L. Rev. 809 (1991) (using the phrases "loss of the pleasure of being alive" and "lost value of life" interchangeably to describe post-death damages).

■ In support of their contention that "loss of life" damages are equivalent to "loss of enjoyment of life" damages, the appellees cite to several cases. Among them are *Sterner v. Wesley College, Inc.*, 747 F. Supp. 263 (D. Del. 1990) and *Willinger v. Mercy Catholic Medical Center*, 393 A.2d 1188 (1978). However, these cases do not support the appellees and, in fact, *Sterner* and *Willinger* both indicate the difference between damages for loss of enjoyment of life and damages for loss of life itself as follows:

> . Even where the victim survives a compensable injury, this Court has never held that loss of life's pleasures could be compensated other than as a component of pain and suffering. Indeed, the two types of loss are interrelated. . . . Thus, to a large extent it has been the plaintiff's consciousness of his or her inability to enjoy life that we have compensated under the rubric of "loss of life's pleasures." Unlike one who is permanently injured, one who dies as a result of his injuries is not condemned to watch life's amenities pass by. *Unless we are to equate loss of life's pleasures with loss of life itself,* we must view it as something that is compensable only for a living plaintiff who has suffered from that loss. It follows that . . . damages for the pain and suffering that may flow from the loss of life's pleasures should only be recovered for the period of time between the accident and the decedent's death.

*Sterner v. Wesley College, Inc.*, 747 F. Supp at 272 (citing *Willinger v. Mercy Catholic Medical Center*, 393 A.2d at 1191) (emphasis added).

After examining this citation from *Willinger*, the *Sterner* court concluded "plaintiffs in the present action may not recover for the hedonic value of the decedent's *lost life* as a distinct basis for recovery under the Delaware survival action statute." *Id.* at 273. The federal district court based this holding on Delaware's survival statute and the fact that the case before it was a diversity action. However, the *Sterner* court recognized that, in a federal § 1983 action, the value of a decedent's lost life *is* recoverable even if state law does not allow for it. At the time *Sterner* was written, federal courts had begun to allow for loss-of-life damages in cases where police officers had shot and killed suspects in violation of their constitutional rights. The *Sterner* court cited to a decision by the Seventh Circuit Court of Appeals in a § 1983 action:

> Where the constitutional deprivation sought to be remedied has caused death, state law that precludes recovery on behalf of the victim's estate for the *loss of life* is inconsistent with the deterrent

policy of section 1983 . . . . Such restrictive state laws must give way to federal common law rules *that permit recovery*. In sum, in a section 1983 action, the estate may recover *damages for loss of life*, conscious pain and suffering experienced by the decedent prior to death, and punitive damages.

*Sterner v. Wesley College, Inc.*, 747 F. Supp. at 273-74 (citing *Bass by Lewis v. Wallenstein*, 769 F.2d 1173, 1190 (7th Cir. 1985)) (emphasis added).

■ Clearly, then, loss–of–life damages and damages for loss of enjoyment of life are not the same, though some courts and scholars have used the term "loss of enjoyment of life" to mean both. It is also apparent from the Seventh Circuit's decision in *Bass by Lewis v. Wallenstein, supra*, that federal common law allows for the recovery of loss–of–life damages and that restrictive state survival statutes that do not allow for these damages will be overruled in cases that implicate federal constitutional violations.

It is not just the federal courts that have allowed for loss–of–life damages. Several states also allow recovery of these damages. In *Montalvo v. Lapez*, 77 Haw. 282, 884 P.2d 345 (1994), the Hawaii Supreme Court noted, "Hedonic damages are damages 'for the loss of enjoyment of life or for the value of life itself, as measured separately from the economic productive value that an injured or deceased person would have had.' " *Id.* at 284, 884 P.2d at 347, n. 2 (citing *Black's Law Dictionary* 391 (6th ed. 1990)). Though *Montalvo* was a personal injury case, the Hawaii Supreme Court used this reasoning to allow loss–of–life damages in *Ozaki v. Association of Apartment Owners of Discovery Bay*, 87 Haw. 273, 954 P.2d 652 (1998).

New Mexico's statutes allow for "fair and just" damages in wrongful death cases brought by a decedent's estate:

> Every such action as mentioned in [the New Mexico Wrongful Death Statute] shall be brought by and in the name or names of the personal representative or representatives of such deceased person, and the jury in every such action may give *such damages, compensatory and exemplary, as they deem fair and just* . . . .

N.M. Stat. Ann. § 41-2-3 (Michie 1978) (emphasis added). In interpreting this statute, the New Mexico Supreme Court held that "the value of *life itself* is compensable under the Act." *Romero v. Byers*, 872 P.2d 840, 847 (N.M. 1994).

Likewise, Connecticut has recognized damages for the loss of the value of a decedent's life in *Katsetos v. Nolan*, 368 A.2d 172 (Conn. 1976):

> In actions for injuries resulting in death, a plaintiff is entitled to "just damages together with the cost of reasonably necessary, medical, hospital and nursing services, and including funeral expenses." "Just damages" include (1) the value of the decedent's lost earning capacity less deductions for her necessary living expenses and taking into consideration that a present cash payment will be made, (2) compensation for the destruction of her capacity to carry on and *enjoy life's activities* in a way she would have done *had she lived*, and (3) compensation for conscious pain and suffering.

*Id.* at 183 (emphasis added). The defendants in *Katsetos* had appealed as excessive the amount of damages awarded for the wrongful death of a mother during childbirth. In upholding the jury award to the estate for the decedent's damages, the Connecticut Supreme Court stated:

> There was evidence from which the jury could have found that the decedent was 41 years of age at the time of her death and had a life expectancy of about 32 years. She was happily married and had four children including the child born on the day of her death. She was a very happy person and in good health before the delivery of her last child. She was a dedicated mother and homemaker and active in many outside activities. She was a state-licensed hairdresser and also had experience in office work. In 1962, she and her husband established a pizza business where she worked until she temporarily discontinued work because of her pregnancy. . . . The defendants argue that the verdict constitutes an award of an annuity of at least $20,000 a year and that it is excessive when one considers that the best indication of a possible salary for the plaintiff's decedent, if she ever returned to hairdressing, was $125 a week plus tips and that any wages she would have earned in the pizza business were limited. The defendants' argument takes into consideration only an evaluation of the destruction of the decedent's earning capacity *and gives no consideration to the award of an amount based on the destruction of the capacity to carry on life's activities* as well as compensation for pain and suffering.

*Id.* at 184 (emphasis added).

It is apparent from this quote that the Connecticut Supreme Court recognized "the destruction of the capacity to carry on life's activities" began at death and went forward through the duration

of the decedent's life expectancy. This was not an amount recovered for damages suffered by a wrongful-death beneficiary, but was an amount awarded for damages suffered by the decedent herself. Though covered in the Connecticut statutes as "just damages," these were damages for the loss of the decedent's life, which, in turn, led to the destruction of her ability to carry on life's activities.

In short, our review of case law from other jurisdictions shows that some jurisdictions award damages for loss of the enjoyment of life that are pre-death, while others award damages for loss of life that begin at death and run forward until the end of life expectancy. This distinction between damages for "loss of life" and those for "loss of enjoyment of life" is borne out by the legal scholarship written over the last quarter-century. Contrary to the appellees' assertion, although damages for "loss of life," and "loss of enjoyment of life" are both hedonic, "loss of life" damages are not the equivalent of those for "loss of enjoyment of life." *See* Cindy Domingue-Hendrickson, *Wrongful Death — New Mexico Adopts Hedonic Damages in the Context of Wrongful Death Actions: Sears v. Nissan (Romero v. Byers)*, 25 N.M. L. Rev. 385 (1995); Maurice B. Graham & Michael D. Murphy, *Hedonic Damages — Where Are We?*, 51 J. Mo. B. 265 (1995) (Graham and Murphy point out that damage awards for loss of enjoyment of life are much less controversial than loss-of-life damages).

This history is important, because it is with this backdrop that our legislature amended the Arkansas survival statute in 2001. Interestingly, the appellees cite *Evans v. United States*, 504 U.S. 255 (1992) for the proposition, "It is a familiar 'maxim that a statutory term is generally presumed to have its common-law meaning.'" *Id.* at 259 (quoting *Taylor v. United States*, 495 U.S. 575, 592 (1990)). The General Assembly presumably understood the difference between "loss of life" damages and "loss of enjoyment of life" damages, and they chose to allow for the recovery of loss-of-life damages in the Arkansas survival statute.

The appellees contend that *only* those damages suffered by a decedent between injury and death are compensable under the Arkansas survival statute. Thus, their argument is that Miss Durham's estate is not entitled to loss-of-life damages, since she was killed instantly in the accident and there was no period of time between her injury and death. In short, her injury *was* her death.

In Ark. Code Ann. § 16-62-101(b), the Arkansas General Assembly chose to use the term "loss of life damages" in its amendment to the survival statute. Thus, the appellees' arguments regarding the meaning and inception of the term "loss of enjoyment of life damages" is irrelevant. Relevant to our inquiry instead is the plain language of the statute as amended. If the statute's language is clear and unambiguous and conveys a clear and definite meaning, we do not resort to rules of statutory interpretation. *Williams v. Little Rock School District, supra.* By its ordinary meaning in common parlance, "loss of life" cannot occur prior to death because it necessarily presupposes death has occurred. One cannot both live and experience loss of life simultaneously.

Loss-of-life damages seek to compensate a decedent for the loss of the value that the decedent would have placed on his or her own life. "Survival" actions have traditionally included those damages suffered by the decedent between injury and death. Nonetheless, Ark. Code Ann. § 16-62-101 makes no distinction between "personal injury" or "death" when it speaks of the term "injury." In other words, when a person is killed instantaneously, as was Miss Durham, her injury *is* her death, which is compensated by loss-of-life damages.

In sum, because the legislature chose to amend the survival statute to add loss-of-life damages as a separate and independent element in addition to all other elements of damage already allowed by law, the appellants are correct that loss-of-life damages are a new element of damages. Moreover, because the phrase "loss of life damages" as used by the legislature in § 16-62-101(b) is clear and unambiguous, and, since loss-of-life damages can only begin accruing at the point when life is lost, at death, there is no reason to believe the legislature intended to require the decedent to live for a period of time between injury and death. Therefore, we hold that it is not necessary for a decedent to live for a period of time between injury and death in order to recover loss-of-life damages under Ark. Code Ann. § 16-62-101(b). Accordingly, we hold that the trial court erred in granting partial summary judgment to the appellees on the loss-of-life damages claim, and we reverse and remand.

### Evidentiary Issue

Though the appellants do not argue this point on appeal, the appellees have noted that the appellants retained an

economist to provide expert testimony about loss-of-life damages. This expert testimony was the subject of a motion in limine filed by the appellees, requesting that the expert testimony be excluded. However, the trial court did not reach the issue of the motion in limine because it granted summary judgment on the claim for loss-of-life damages. In a case decided three decades ago by this court, we determined that there is no hard and fast rule to determine compensatory damages for non-pecuniary losses:

> No rule has been established — and in the nature of things none can be — for determining what compensation should be paid for loss of life, for pain and suffering, for loss or decrease of earning power, for mental anguish accompanied by physical injury, for loss of companionship, and for the various elements entering into damage actions.

*Clark & Sons v. Elliott*, 251 Ark. 853, 857, 475 S.W.2d 514, 517 (1972). While we do agree with the appellees that the determination of damages is within the purview of the jury, without a trial court ruling or order before us on the issue of expert testimony, this issue is not ripe for consideration.

### Duplicate Recovery

The appellees also assert that the "threat" of duplicative damages is a reality because, they contend, the appellants' theory is that loss-of-life damages include the value of future lost earnings in addition to non-pecuniary loss. The appellees point out that future lost earnings are specifically recoverable by statutory beneficiaries under the Arkansas Wrongful Death Statute, Ark. Code Ann. § 16-62-102 (Supp. 2003). However, the appellants have argued that they are making no wrongful death claim for pecuniary damages in this case and, therefore, there can be no double recovery for those damages. Again, without a ruling or order squarely before us, this issue is not ripe for consideration at this time.

Reversed and remanded.