Carolyn L. **STERNER** and Michael A. Sterner, Individually and as Administrator of the Estate of Christopher L. Sterner, deceased, Plaintiffs,

v.

**WESLEY COLLEGE, INC.**, a domestic non-taxable granting institution, Edward H. McGee and Robert E. Rumsey, Defendants.

Joseph **MORGAN**, Plaintiff,

v.

**WESLEY COLLEGE, INC.**, a domestic non-taxable granting institution, Defendant,

v.

Robert **RUMSEY** and Edward H. McGee, Third Party Defendants.

Civ. A. Nos. 88–508–JRR, 87–603–JRR.

United States District Court,
D. Delaware.

Sept. 14, 1990.

---

Richard E. Poole and David L. Baumberger of Potter, Anderson & Corroon, Wilmington, Del., for plaintiffs Carolyn and Michael Sterner.

James S. Green of Connolly, Bove, Lodge & Hutz, Wilmington, Del., for plaintiff Joseph Morgan.

Benjamin C. Wetzel, III of Bailey & Wetzel, P.A., Wilmington, Del., for defendant Wesley College, Inc.

Stephen P. Casarino of Casarino, Christman & Shalk, Wilmington, Del., for defendant Edward H. McGee.

Michael Weiss of Kimmel, Weiss & Carter, P.A., Wilmington, Del., for defendant Robert E. Rumsey.

## OPINION

ROTH, District Judge.

These consolidated diversity actions arise from a fire that broke out in a dormitory at Wesley College on April 12, 1987. As a result of that fire Christopher Sterner died and Joseph Morgan was injured. The parents of Christopher Sterner, with his father also acting as administrator of Christopher's estate, filed suit against Wesley College and against Edward McGee and Robert Rumsey, two students who plaintiffs claim were responsible for setting the fire. The Sterners allege both negligent and reckless conduct by the defendants and demand compensatory and punitive damages. Joseph Morgan has filed suit against Wesley College for compensatory damages.

Presently before the Court are the defendants' motions for partial summary judgment on the issues of whether the Sterners can recover punitive damages against the defendants and whether plaintiffs should be permitted to introduce evidence of hedonic damages at trial. Morgan did not participate in these motions. For the reasons stated below, we will grant Wesley College's motion for partial summary judgment on the availability of punitive damages, deny the motions of McGee and Rumsey on that issue, and, except to the extent that hedonic damages are included in the damages recoverable for pain and suffering, grant defendants' motion for exclusion of hedonic damages.

## FACTUAL BACKGROUND

Christopher Sterner, Edward McGee, Robert Rumsey and John Stelter, Jr., were students at Wesley College, located in Dover, Delaware, during the 1986–1987 academic year. They resided in Williams Hall, a Wesley College dormitory; Rumsey, Stelter and Sterner in different rooms on the second floor and McGee on the third floor. The College generally required all students under the age of twenty-one to reside in campus dormitories. At approximately 2:00 a.m. on Sunday, April 12, 1987, a fire broke out in Williams Hall, resulting in Christopher Sterner's death from smoke inhalation and in Joseph Morgan's injuries.

On the evening of Saturday, April 11, McGee, Rumsey and Stelter had been drinking beer at a party in Rumsey's room. Stelter retired to his own room around midnight, after having an argument at the party. Shortly before 2:00 a.m. on April 12, Rumsey and McGee went to Stelter's room and found the door closed and locked. They tried to rouse Stelter by pounding on his door, but Stelter did not respond. Rumsey and McGee assumed that he was asleep in the room.

McGee and Rumsey then went up to McGee's room on the third floor to get two smoke bombs.[1] McGee lit one of the smoke bombs in the open hallway of the third floor, and McGee and Rumsey remained there until the bomb had expelled its contents. McGee and Rumsey then returned to the door of Stelter's room on the second floor. A resident assistant for the second floor observed McGee and Rumsey close to Stelter's door and questioned them briefly concerning their presence in the hallway. McGee and Rumsey said nothing about their plan to set off a smoke bomb. The resident assistant left them in the hallway and returned to his room.

McGee then ignited the second smoke bomb and aimed it directly under the door of Stelter's room by holding it close to the base of the door. Rumsey was with McGee

---

1. At oral argument, counsel for McGee described the smoke bombs as consisting of a container approximately one inch in diameter, with a fuse leading to the container. When the fuse is lit, it in turn ignites another flame within the container. This flame ignites fuel which is expelled from the container in the form of thick smoke.

as he did this. After the bomb had expelled all of its contents, Rumsey and McGee returned to Rumsey's room. There had been no response from Stelter. Rumsey testified in deposition that they set off the smoke bomb as a prank to rouse Stelter from his room.

A fire broke out on the second floor of Williams Hall at this time. McGee and Rumsey concede, for the purpose of their present motions only, that the fire started in Stelter's room and was ignited by the smoke bomb that McGee had aimed under the base of Stelter's door.[2] Stelter kept a rolled-up towel taped to the inside base of his door. McGee and Rumsey were aware of the placement of this towel from prior visits to Stelter's room.

Wesley College maintained an uncomplicated type of fire alarm system in Williams Hall. There were two bells on each floor along with mechanical pull switches to set off the alarm when a fire was detected. The alarm system could not detect the presence of smoke or high temperature. Wesley College tested the alarm system before dormitory residents arrived each semester. The system was also tested once a month either by a fire drill or simply by the fact that a false alarm had been set off.

Patrick McGinley, a fire safety expert retained by defendant Wesley College for this litigation, testified at his deposition that the alarm system used in Williams Hall did not require inspection and maintenance by particularly qualified personnel, unless it was likely that the system was not functioning properly. It is McGinley's opinion that, in the absence of an apparent malfunction, this type of system can be tested properly by the method employed by Wesley College. Plaintiffs do not contest McGinley's accuracy in this regard.

McGinley also testified that in his opinion the Wesley College alarm system was a suitable type of system for a college dormitory. He believes that a more sophis-

ticated smoke-detecting system would provide as many complications as it would benefits in such a setting. Plaintiffs contend that Wesley College should have installed a more sophisticated alarm system in Williams Hall. However, Fred Kirchner, an alarm system technician upon whose deposition plaintiffs rely, testified that the College was not required by applicable safety standards to install smoke detectors.

At the time of the April 12 fire, the alarm system failed to go off when students pulled the manual switches. The Resident Director, resident assistants and other students in the dormitory shouted in the halls and went door to door to rouse the residents of Williams Hall and evacuate them.

When the student in the room next to Christopher Sterner's had fled the fire, Christopher's door was still closed and locked. The firemen, when they arrived, found Christopher lying on the floor at the open door to his room. He was pronounced dead on arrival at the hospital. Joseph Morgan awoke in his smoke filled room. He couldn't see or find the door. He collapsed on the floor and was able to crawl under his desk and cover himself with a blanket. The firemen found him there unconscious.

The alarm system in Williams Hall had functioned properly on previous occasions when it was tested by the College or set off by false alarms. One such false alarm had occurred late in the evening on Friday, April 10, 1987. Russell Pleasonton, a Wesley College security guard, responded to the false alarm and reset the alarm system. Normally, the alarm bells should ring continuously until turned off. Pleasonton noticed on this occasion that the ringing of the alarm bells faded and stopped before he turned off the alarm system. He reset the system and checked the panel of circuit breakers which were all in the proper posi-

---

**2.** The Sterners filed a separate action in this Court against Stelter, claiming that the fire erupted in Stelter's room, and that he had a duty to control the spread of that fire or to warn others of its danger. *Sterner v. Stelter*, No. 89–80–JRR (D.Del. filed Feb. 24, 1989). The action against Stelter has been consolidated with the present two actions for discovery purposes only. The Court shall consider at a later time whether the action against Stelter should be consolidated with the present two actions for trial purposes as well.

tion. A warning device in the alarm system, designed to emit a buzz if there was a problem in the system, did not make any sound on that evening. Apparently, at some time in the past, someone had placed a piece of tape in the device to prevent the buzzer from sounding.

Pleasonton also noticed that one of the alarm bells was missing from the first floor of Williams Hall. He informed the Resident Director of the dormitory and the maintenance mechanic on duty of this fact. Daniel Squires, the mechanic, did not have an opportunity to replace the missing bell between late Friday evening and the April 12 fire. During that period he spent time repairing the plumbing connected to a sink that had been torn from the wall of one of the bathrooms in Williams Hall. Squires believed that the missing bell would not affect the functioning of the other alarm bells.

As described above, Rumsey and McGee were drinking beer in Rumsey's room on the evening of April 11. Both students were under twenty-one years of age. Wesley College did not state in its student contracts, or in other materials sent to the students, that consumption of alcohol in dormitory rooms by students under the age of twenty-one was expressly prohibited by the College. The College did not police drinking by underage students in the dormitory rooms but simply relied on the fact that twenty-one was the legal drinking age in the State of Delaware. The College did not allow alcohol at any College functions or in any public places on the campus. The College provided an alcohol education program during two sessions of the student orientation course. These two sessions were devoted to the physical and behavioral effects of alcohol. The College also had instituted a program of counselling for students with alcohol abuse problems. The administration considered its approach to alcohol to be rehabilitative and educational as opposed to punitive.

## DISCUSSION

In this diversity jurisdiction action, the parents of Christopher Sterner, with his father also acting as administrator of Christopher's estate, brought suit for compensatory and punitive damages against Wesley College, McGee and Rumsey. Joseph Morgan brought suit against Wesley College for compensatory damages.

Defendant Wesley College has moved for partial summary judgment on the following grounds: (1) plaintiffs cannot recover punitive damages as a matter of law under Delaware's wrongful death statute, 10 Del.C. § 3724; (2) no reasonable fact-finder could conclude that the conduct of Wesley College exhibited that reckless indifference required for plaintiffs to recover punitive damages under Delaware's survival action statutes, 10 Del.C. §§ 3701 and 3704(a); and (3) "hedonic" damages are not recoverable in Delaware either a) under the survival statute for Christopher's loss of the enjoyment of like to the same extent and measure as if he had lived, or b) under the wrongful death statute by his parents for Christopher's loss of the enjoyment of life. Wesley College also seeks to bar the testimony of plaintiff's expert witness on "hedonic" damages. Defendants McGee and Rumsey join in the motion by Wesley College and argue separately that their conduct can not be found to exhibit the reckless indifference required for an award of punitive damages under the survival action statutes. Each argument will be addressed in turn below.

### I. Punitive Damages under the Wrongful Death Statute

■ Wesley College argues that the plain language and legislative history of the Delaware wrongful death statute, 10 Del.C. § 3724, do not permit the imposition of punitive damages. The Delaware courts have yet to address this issue on point. This Court therefore must attempt to predict how the Delaware Supreme Court would decide this question. *Commissioner of Internal Revenue v. Estate of Bosch*, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967). In such an analysis of state law, the decisions of lower state courts are not controlling but provide guidance on state law to which we give appropriate defer-

ence. *Id.; Herber v. Johns–Manville Corp.*, 785 F.2d 79, 81 (3d Cir.1986).

The wrongful death statute provides, in pertinent part:

(a) An action under this subchapter shall be for the benefit of the wife, husband, parent and child of the deceased person.

(b) If there are no persons who qualify under subsection (a) of this section, an action shall be for the benefit of any person related to the deceased person by blood or marriage.

(c) In an action under this subchapter, damages may be awarded to the beneficiaries proportioned to the injury resulting from the wrongful death....

(d) In fixing the amount of damages to be awarded under this subchapter, the court or jury shall consider all the facts and circumstances and from them fix the award at such sum as *will fairly compensate* for the injury resulting from the death. In determining the amount of the award the court or jury may consider the following:

(1) Deprivation of the expectation of pecuniary benefits to the beneficiary or beneficiaries that would have resulted from the continued life of the deceased;

(2) Loss of contributions of support;

(3) Loss of parental, marital and household services, including the reasonable cost of providing for the care of minor children;

(4) Reasonable funeral expenses not to exceed $2,000;

(5) Mental anguish resulting from such death to the surviving spouse and next of kin of such deceased person. However, when mental anguish is claimed as a measure of damages under this subchapter, such mental anguish shall be applicable only to the surviving spouse, children, father and mother....

10 *Del.C.* § 3724 (emphasis added), 63 Del. Laws, ch. 256, § 4 (effective Dec. 1, 1982).

At common law, a tort claim terminated with the death of the injured party. The wrongful death statute is one of a number of statutes enacted by the Delaware General Assembly to ameliorate such a harsh rule at common law. Therefore, this wrongful death statute, like the survival statutes discussed below, is in derogation of the common law and must be strictly construed. *E.g., Johnson v. Physicians Anesthesia Serv., P.A.*, 621 F.Supp. 908, 912–13 (D.Del.1985); *Magee v. Rose*, 405 A.2d 143, 146 (Del.Super.1979). Applying this rule of strict construction, the Delaware courts held that a prior version of the wrongful death statute provided only for "pecuniary" damages and that imposition of punitive damages was not permissible under the statute. *Reynolds v. Willis*, 209 A.2d 760, 762 (Del.1965) (holding that punitive damages do not constitute type of pecuniary damages recoverable under 10 *Del.C.* § 3704(b), now repealed); *Magee*, 405 A.2d at 147 (same).[3]

Wesley College argues that the plain language of section 3724 in utilizing the phrase "will fairly compensate" indicates that only compensatory damages are available under its terms. This argument is supported by the fact that the purpose of punitive damages is not to compensate the injured party, but rather to punish the tortfeasor. As the Delaware Supreme Court stated in *Jardel Co. v. Hughes*, 523 A.2d 518 (Del.1987): "Punitive damages are fundamentally different from compensatory damages both in purpose and formulation. Compensatory damages aim to correct private wrongs, while assessments of punitive damages implicate other societal policies." *Id.* at 528; *accord Reynolds*, 209 A.2d at 763 ("In Delaware, [punitive damages are] allowed not by way of recompense to an injured plaintiff, but as punishment to the tortfeasor when his act was committed wilfully or wantonly."). Defendants urge, therefore, that a plain reading of the term

---

**3.** Section 3704(b) provided:

(b) Whenever death is occasioned by unlawful violence or negligence, and no suit is brought by the party injured to recover damages during his or her life, the widow or widower of any such deceased person, or, if there is no widow or widower, the personal representatives, may maintain an action for and recover damages for the death and loss thus occasioned.

10 *Del.C.* § 3704(b), *repealed by* 63 Del. Laws, ch. 256, § 3.

"compensate" in section 3724 cannot logically include punitive damages. We agree and believe that the Delaware Supreme Court would also so conclude.

The legislative history of this statute also indicates that the Delaware General Assembly intended to preclude the imposition of punitive damages under its terms. A provision for imposition of punitive damages was initially proposed as a subsection 3724(d)(6). This proposed provision was specifically deleted in its entirety from the legislation by an amendment. Amendment to House Amendment No. 1 to House Bill No. 426, 131st Del.Gen.Assembly (May 6, 1982) (sponsored by Representative Roy). The synopsis to this Amendment to House Amendment No. 1 to House Bill No. 426 states that the proposed subsection 3724(d)(6) was stricken to "delet[e] punitive damages from the amount of the award the court or jury may consider in a wrongful death action." *Id.* Plaintiffs' argument that this amounted only to a deletion of an express provision, while leaving imposition of punitive damages available on an implicit basis, fails in view of this legislative history.

Plaintiffs contend that the language of 10 *Del.C.* § 3725, 63 Del.Laws, ch. 256, § 4, demonstrates a legislative intent to permit punitive damages in the subchapter of which the wrongful death statute is a part: "The purpose of this subchapter is to permit recovery of damages not limited to pecuniary losses by persons injured as the result of the death of another person." However, the elimination of a prior limitation of damages to pecuniary losses was intended for a different reason than that of permitting punitive damages under the new wrongful death statute.

In court decisions addressing the predecessor wrongful death statute, section 3704(b), recovery was not permitted for an array of losses that the courts believed did not qualify as "pecuniary" losses. The new legislation, of which sections 3724 and 3725 are part, changed the law to permit recovery of compensatory damages which had been precluded as non-pecuniary under section 3704(b). *Compare Abele v. Massi,*

273 A.2d 260, 261 (Del.1970) (value of deceased wife's household services does not constitute pecuniary loss and therefore not recoverable) *and Cann v. Mann Constr. Co.,* 93 A.2d 741, 743–44 (Del.Super.1952) (funeral expenses do not constitute pecuniary loss and therefore not recoverable) *with* 10 *Del.C.* § 3724(d)(3) (providing for recovery for "[l]oss of parental, marital and household services, including the reasonable cost of providing for the care of minor children") *and id.* § 3724(d)(4) (providing for recovery of "[r]easonable funeral expenses"). The language of section 3725 expresses this change in the definition of recoverable compensatory damages to include types of compensatory damages that were categorized as "non-pecuniary" in the past. This Court cannot ignore the legislative history and case authority under repealed section 3704(b) and construe section 3725 to express an intent by the legislature to permit recovery of punitive damages under the new wrongful death statute. We believe the Delaware Supreme Court would reach the same conclusion.

Plaintiffs further argue that it would be unjust for punitive damages to be available to a party who incurs wantonly inflicted pain and suffering under the survival action statute, as discussed below, but for such damages to be unavailable under the wrongful death statute to the survivors of a party who died instantaneously from wantonly inflicted injuries. However, we cannot ignore the plain language of the wrongful death statute and the record of a legislative intent to preclude the imposition of punitive damages under that statute. To the extent that the plaintiffs perceive an injustice by the unavailability of punitive damages under the wrongful death statute, their arguments should be made to the Delaware General Assembly and not to courts which are bound to uphold the clear dictates of the legislature.

## II. *Punitive Damages under the Survival Statutes*

█ The parties concede that punitive damages are available under the Delaware survival statutes, 10 *Del.C.* §§ 3701 and 3704(a), for the pain and suffering incurred by the decedent before death. Section

3704(a), the survival statute concerning "personal injury actions" provides:

> (a) No action brought to recover damages for injuries to the person by negligence or default shall abate by reason of the death of the plaintiff, but the personal representatives of the deceased may be substituted as plaintiff and prosecute the suit to final judgment and satisfaction.

Section 3701, a survival statute addressing "causes of action generally," provides:

> All causes of action, except actions for defamation, malicious prosecution, or upon penal statutes, shall survive to and against the executors or administrators of the person to, or against whom, the cause of action accrued. Accordingly, all actions, so surviving, may be instituted or prosecuted by or against the executors or administrators of the person to or against whom the cause of action accrued. This section shall not affect the survivorship among the original parties to a joint cause of action.

10 *Del.C.* § 3701.

The Delaware courts have held that punitive damages are available under the survival action statutes for the pain and suffering incurred by the deceased prior to death. The Delaware Supreme Court in *Reynolds v. Willis*, 209 A.2d 760 (Del. 1965), held that "[i]n Delaware, this type of damages is allowed not by way of recompense to an injured plaintiff, but as punishment to the tortfeasor when his act was committed wilfully or wantonly. Theoretically, there appears no reason for withholding this punishment simply because the victim dies from the injuries received." *Id.* at 763 (citations omitted); *accord Magee v. Rose,* 405 A.2d 143, 146–47 (Del.Super. 1979) (holding that punitive damages are available under survival statute for pain and suffering incurred by decedent between time of injury and death). Since defendants do not contend that Christopher Sterner's death occurred instantaneously, punitive damages are applicable to the brief period of pain and suffering he may have endured.

Defendants Wesley College, McGee and Rumsey argue that no reasonable fact-finder could conclude from the evidence of record that each defendant's conduct involved the reckless indifference required for recovery of punitive damages. In *Jardel Co. v. Hughes*, 523 A.2d 518 (Del.1987), the Delaware Supreme Court described the standard for an imposition of punitive damages as follows:

> The penal aspect and public policy considerations which justify the imposition of punitive damages require that they be imposed only after a close examination of whether the defendant's conduct is "outrageous," because of "evil motive" or "reckless indifference to the rights of others." Mere inadvertence, mistake or errors of judgment which constitute mere negligence will not suffice. It is not enough that a decision be wrong. It must result from a conscious indifference to the decision's foreseeable effect.
>
> As noted above, the outrageous conduct may be the result of an evil motive or reckless indifference. In rough approximation, these terms parallel the wilful and wanton standard of the guest statutes. Each refers to a distinct state of mind, one of a conscious awareness, the other a conscious indifference. But each requires that the defendant foresee that his unacceptable conduct threatens particular harm to the plaintiff either individually or as part of a class similarly situated. We prefer the term "reckless indifference" to the term "wanton," which has statutory roots now largely extinct.

*Id.* at 529–30 (quoting Restatement (Second) of Torts § 908 comment b (1979)). In regard to recklessness, the *Jardel* court held further that:

> Two significant elements must be present for recklessness to exist. The first is the act itself.... The second, crucial element involves the actor's state of mind and the issue of foreseeability, or the perception the actor had or should have had of the risk of harm which his conduct would create.

*Id.* at 530.

### Defendants McGee and Rumsey

Defendants McGee's and Rumsey's motions for partial summary judgment on

the issue of punitive damages under the survival statute must be denied. The evidence of record shows that McGee and Rumsey ignited a smoke bomb and aimed that bomb at the base of the door to Stelter's dormitory room. Rumsey and McGee believed Stelter was asleep in that room, and in a sufficiently deep state of sleep that he did not respond to their attempts to rouse him by pounding on his door. A reasonable fact-finder could conclude that this conduct constituted an unacceptable act with reckless indifference to the risk it posed to Stelter and to others in the dormitory. The harm posed was the danger of smoke inhalation by an unresponsive Stelter in the enclosed space of his room, the danger of igniting a fire inside the room where Stelter was believed to be asleep, and the danger of the injuries which such a fire and accompanying smoke might cause both to Stelter and to others in the dormitory.

McGee and Rumsey argue that they lacked the requisite state of mind because they did not actually believe that the smoke bomb would cause a fire. This argument must be rejected. The reckless indifference standard involves not just what a defendant actually foresaw, but what a defendant reasonably should have foreseen. *Jardel*, 523 A.2d at 530. Therefore, if the danger of the defendant's conduct was reasonably foreseeable, the defendant acted in reckless indifference to that risk of danger if he nonetheless proceeded with the hazardous conduct. It was reasonably foreseeable that a smoke bomb, targeted directly under the door of Stelter's enclosed dormitory room, involved the risk of causing a fire within that enclosed space.

### Defendant Wesley College

Defendant Wesley College has also moved for partial summary judgment on the issue of punitive damages under the survival statutes. We will grant summary judgment for Wesley College on this issue, on the ground that no reasonable fact-finder could conclude upon the evidence of record that Wesley College conducted itself in a manner for which punitive damages can be recovered.

Plaintiffs argue that Wesley College can be liable for punitive damages based upon its failure to specifically prohibit the consumption of alcohol in the dormitories by students under the age of twenty-one and based upon the malfunctioning of the fire alarm system in Williams Hall on April 12. Plaintiffs also contend that Williams Hall had become the site of frequent pranks similar to that committed by McGee and Rumsey on April 12 and that Wesley College's failure to prevent such conduct by students in the dormitory provides a basis for punitive damages.

■ We find that a reasonable fact-finder could not conclude from the evidence that Wesley College's failure to institute its own express prohibitions on the use of alcohol by minors in the dormitories constitutes anything more than negligence, if that. Wesley College based its lack of such an independent regulation on the fact that the students were governed by Delaware law which set the minimum legal age for consumption of alcohol. In addition, the College had a program of education on the effects of alcohol and a counselling program for students who abused alcohol. Neither counsel for plaintiffs nor Wesley College are aware of any evidence of record that officials of Wesley College had reason to believe that the College's regulations concerning the use of alcohol in the dormitories were deficient to the point of creating hazardous circumstances on the College campus or that a reinforcement of the provisions of state law was required in the form of a college regulation.

■ In regard to the fire alarm system, we find that a reasonable fact-finder could not conclude that Wesley College's failure to inspect and possibly repair the alarm system at Williams Hall between the late evening of Friday, April 10, and 2:00 a.m. on Sunday, April 12, constitutes more than negligence. The system itself was appropriate for a college dormitory and was generally tested and maintained in a proper fashion. In addition, the fact that replacement of a missing bell and investigation of a fading ring, defects that were not con-

sidered to affect the integrity of the system, were not repaired over the weekend, does not constitute reckless indifference.

■ Concerning the failure of the College to prevent McGee and Rumsey from igniting the smoke bomb, Wesley College had instituted a system of dormitory supervision by resident directors and assistants who were assigned to each dormitory. We find that a reasonable fact-finder could not conclude that the failure of the resident assistant to perceive, when he spoke to McGee and Rumsey on April 12, that they intended to set off the smoke bomb, constitutes conduct susceptible to punitive damages. The evidence of record does not show that the resident director and assistants assigned to Williams Hall failed to act reasonably to such a degree that their conduct as employees of Wesley College should provide a basis for recovery of punitive damages by plaintiffs.

### III. *Availability of Hedonic Damages*

■ The hedonic value of a decedent's life is defined broadly as the value of the lost pleasures of life. Hedonic damages therefore involve a measure of loss of life's pleasures "separate from the economic productive value" that the decedent would have possessed if he had not died. *Sherrod v. Berry*, 629 F.Supp. 159, 162 (N.D.Ill. 1985), *rev'd on other grounds*, 856 F.2d 802 (7th Cir.1988) (en banc). Plaintiffs argue that they can introduce testimony concerning the hedonic damages to Christopher Sterner due to his injury and death for two purposes.

■ First, the plaintiffs argue that recovery of damages for the hedonic value of that portion of decedent's life which was extinguished by the fire should be permitted as a distinct basis for recovery under the Delaware survival statutes, 10 *Del.C.* §§ 3701 and 3704(a). The Delaware courts have yet to address this issue on point. This Court therefore must attempt to predict how the Delaware Supreme Court would decide this issue. We believe that the Delaware Supreme Court would reject the plaintiffs' argument.

We find the reasoning of the Pennsylvania Supreme Court in *Willinger v. Mercy Catholic Medical Center*, 482 Pa. 441, 393 A.2d 1188 (1978), persuasive on this issue. The Delaware Supreme Court observed in *Loden v. Getty Oil Co.*, 359 A.2d 161, 163 (Del.1976), that Pennsylvania's survival act was the source "from which [Delaware's section] 3704(a) apparently was taken." In *Willinger*, the Pennsylvania Supreme Court addressed the scope of recovery under that state's survival act and held as follows:

> Appellant would have us hold that it is not error for a trial court to instruct the jury that, under the Survival Act, it may separately consider an award compensating for the decedent's "loss of life's pleasures".
>
> The rule is well established in Pennsylvania, however, that compensation for the loss of life's amenities is recoverable only if the victim survives the accident giving rise to the cause of action. Any other rule would be contrary to the compensatory objective of awarding damages to tort victims.

*Willinger*, 393 A.2d at 1190 (footnote omitted). The Pennsylvania court stated further that:

> Even where the victim survives a compensable injury, this Court has never held that loss of life's pleasures could be compensated other than as a component of pain and suffering. Indeed, the two types of loss are interrelated.... Thus, to a large extent it has been the plaintiff's consciousness of his or her inability to enjoy life that we have compensated under the rubric of "loss of life's pleasures". Unlike one who is permanently injured, one who dies as a result of injuries is not condemned to watch life's amenities pass by. Unless we are to equate loss of life's pleasures with loss of life itself, we must view it as something that is compensable only for a living plaintiff who has suffered from that loss. It follows that ... damages for the pain and suffering that may flow from the loss of life's pleasures should only be recovered for the period of time between the accident and the decedent's death.

*Id.* at 1191 (citations omitted); *accord Winter v. Pennsylvania R.R. Co.*, 68 A.2d 513, 514–15 (Del.Super.1949) (under Delaware law hedonic damages recoverable only as measure of injured party's pain and suffering or permanent impairment due to physical injury); *see also Hanson v. Reiss S.S. Co.*, 184 F.Supp. 545, 552–53 (D.Del.1960) (hedonic damages permitted only as measure of pain and suffering in admiralty action for negligence).

We conclude that plaintiffs in the present action may not recover for the hedonic value of the decedent's lost life as a distinct basis for recovery under the Delaware survival action statute. Plaintiffs may offer evidence of the hedonic value of the decedent's life only to the extent that it is relevant as a measure of the decedent's pain and suffering in the time between the start of the fire in Williams Hall and decedent's death. In view of the brevity of this period, the Court will entertain at a later time any objections by defendants that expert testimony on hedonic damages would not be an aid to the jury in assessing the pain and suffering incurred by the decedent. We note in this regard that plaintiffs have submitted a proffer of their expert's testimony concerning hedonic damages (Docket Item 148) which indicates that the expert's formulations do not provide such a measure of the decedent's pain and suffering.

Second, plaintiffs contend that the hedonic value one could assign to Christopher Sterner's life had he survived should be considered as part of the damages recoverable for the mental anguish suffered by his survivors upon his death. Damages for mental anguish suffered by the survivors can be recovered under the Delaware wrongful death statute, 10 *Del. C.* § 3724(d)(5).

In support of this argument, plaintiffs rely primarily on the decision of the district court in *Sherrod v. Berry*, 629 F.Supp. 159

(N.D.Ill.1985), to admit into evidence the testimony of the same expert witness that plaintiffs intend to use in the present action.[4] Although the reasoning and rulings of the district and appellate courts in the *Sherrod* litigation provide attractive quotations for plaintiffs, those decisions are inapposite to the present action.

The court in *Sherrod* permitted evidence of hedonic value of the decedent's lost life in an action under 42 U.S.C. § 1983. A young black American was killed when a caucasian police officer shot him in the head as he sat in the front seat of an automobile. The parents of the decedent alleged that the police officer committed an unconstitutional act due to racial animus, which deprived the decedent of his life. When the act which caused a death is itself charged as a "constitutional tort" under section 1983, applicable survival and wrongful death statutes under state law will be applied only to the extent that they are consistent with the policies and legislative intent underlying section 1983. If those state statutes preclude recovery of the hedonic value of the decedent's lost life as a distinct basis for recovery, they will be ignored as inconsistent with the policies of section 1983. *E.g., Bell v. City of Milwaukee*, 746 F.2d 1205, 1239 (7th Cir.1984) ("One of the primary reasons Section 1983 was enacted was to remedy and deter racial killing.... The legislative history behind Section 1983 expresses an unequivocal concern for protecting life."). As the Seventh Circuit has held:

> [W]here the constitutional deprivation sought to be remedied has caused death, state law that precludes recovery on behalf of the victim's estate for the loss of life is inconsistent with the deterrent policy of section 1983.... Such restrictive state laws must give way to federal common law rules that permit recovery. In sum, in a section 1983 action, the estate may recover damages for loss of life, conscious pain and suffering experienced

---

**4.** The district court's decision in *Sherrod* was initially affirmed by the Seventh Circuit, but that appellate opinion was subsequently vacated on a motion for rehearing en banc. *Sherrod v. Berry*, 827 F.2d 195 (7th Cir.1987), *vacated*, 835 F.2d 1222 (7th Cir.1988) (en banc). Upon re-

hearing en banc, the Seventh Circuit reversed the district court's decision and remanded for a new trial due to error concerning liability issues. *Sherrod v. Berry*, 856 F.2d 802 (7th Cir. 1988) (en banc).

by the decedent prior to death, and punitive damages....

*Bass by Lewis v. Wallenstein,* 769 F.2d 1173, 1190 (7th Cir.1985); *accord Bell,* 746 F.2d at 1236–40 (Wisconsin wrongful death and survival action statutes which precluded recovery of hedonic damages for loss of life held inconsistent with deterrent policy of section 1983 actions and thus inapplicable); *see Sherrod v. Berry,* 629 F.Supp. at 163 (relying on *Bell* for rule that damages for hedonic value of loss of life recoverable under section 1983), *aff'd,* 827 F.2d at 205 (same); *cf. Estate of Bailey by Oare v. County of York,* 768 F.2d 503, 509 n. 7 (3d Cir.1985) (adopting *Bell* holding regarding scope of 1983 actions for deaths resulting from unlawful state action).

In contrast, the present action is a diversity jurisdiction lawsuit based entirely on state law. Court decisions concerning damages recoverable in section 1983 actions, in which unconstitutional acts caused a death and the particular deterrent policies of section 1983 are invoked, are inapposite to such actions based solely on state law. The Delaware legislature has delineated specifically the types of damages which are recoverable under Delaware tort law. It is the terms and intent of 10 *Del.C.* § 3724(d)(5) alone which apply here. Hedonic damages are not provided for by the terms of that statute.

Furthermore, in regard to the problem of the speculative nature of damages evidence, we agree with the *Sherrod* court that "[t]he rule against recovery of 'speculative damages' is generally directed against uncertainty as to cause rather than uncertainty as to measure or extent." *Sherrod,* 629 F.Supp. at 164. We find that the relevancy of evidence of the hedonic value of Christopher Sterner's life in regard to the mental anguish suffered by Carolyn and Michael Sterner is so attenuated as to be impermissibly speculative. *Cf.* Fed.R.Evid. 702 (limiting expert testimony to circumstances in which it "will assist the trier of fact"). Such evidence would be overly speculative as a matter of relevancy and causation, and not just as a matter of uncertain measurement.

The issue in evaluating the mental anguish suffered by the survivors is not what loss of the pleasure of life the decedent might have suffered, but is rather the survivors' "intense experience we commonly refer to as the grieving process following the loss of a loved one." *Okie v. Owens,* No. 83–AP–15 slip op. at 9 (Del.Super. Oct. 16, 1985) (addressing elements of mental anguish under section 3724(d)(5)). To the extent that part of the survivors' mental anguish is their perception that it is tragic that the decedent's death cut short his enjoyment of life's pleasures, such evidence should be obtained through the testimony of the survivors who suffer such mental anguish, and not through statistical calculations of the value society may place upon the pleasure of living.

Moreover, plaintiffs have submitted a proffer of their expert's testimony concerning the hedonic value of the decedent's lost life (Docket Item 148) which indicates that the expert's formulations do not provide such a measure of the parents' mental anguish. Although plaintiffs argued in their briefs and oral argument that they wished to present evidence of the hedonic value of Christopher Sterner's life as a component of the mental anguish suffered by his parents, and therefore recoverable under 10 *Del.C.* § 3724(d)(5), the description of the bases and formulation of this evidence by plaintiffs' expert demonstrates that it could be presented only as a distinct basis for recovery and not as a measure of the parents' mental anguish. Plaintiffs have presented no persuasive authority for the proposition that hedonic damages are recoverable as a distinct form of recovery under section 3724. For the reasons stated above, we find, and we predict that the Delaware Supreme Court would also find, that evidence of the hedonic value of Christopher Sterner's life is inadmissible under Delaware's wrongful death statute, as either a distinct basis for recovery or as a purported measure of the parents' mental anguish.

### CONCLUSION

Wesley College's motion for a partial summary judgment that the imposition of punitive damages is not available under the Delaware wrongful death statute, 10 *Del.C.* § 3724, is granted. Wesley Col-

lege's motion for a partial summary judgment that no reasonable fact-finder could conclude on the record of this case that Wesley College is susceptible to imposition of punitive damages under the Delaware survival statutes, 10 *Del.C.* §§ 3701 and 3704(a), is granted.

Wesley College's motion for a partial summary judgment that hedonic damages are not available as a distinct basis for recovery under the Delaware survival action statutes, 10 *Del.C.* §§ 3701 and 3704(a), is granted. Plaintiffs may utilize evidence of the hedonic loss or value concerning Christopher Sterner's death only to the extent that such evidence is submitted as a component of pain and suffering incurred by Christopher Sterner and recoverable under the Delaware survival statutes. Wesley College's motion for a partial summary judgment that plaintiffs be precluded from introducing evidence of the hedonic loss to Christopher Sterner as a component of the damages for mental anguish suffered by his survivors and recoverable under 10 *Del.C.* § 3724(d)(5), is granted.

Defendant McGee's and defendant Rumsey's motions for partial summary judgments that no reasonable fact-finder could find either of them susceptible to the imposition of punitive damages under the Delaware survival statutes are denied.

An appropriate order shall issue.