Fegan v. Brattleboro Mem. Hosp.      CV-95-26-SD    11/12/96

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE


Joyce Fegan, Executrix of the
 Estate of Clayton Fegan;
Joyce Fegan, individually


_____v.                              Civil No. 95-26-SD


Brattleboro Memorial Hospital;
Orthopedic and Sports Medicine
 of Southern Vermont;
A. Douglas Lilly, M.D.



O R D E R


     Trial of this action is scheduled to commence with jury

selection on the morning of November 19, 1996.  This order

addresses the issues raised by certain motions and/or legal

memoranda.


1.  The Choice-of-Law Issue

     Raised by a legal memo filed in behalf of the defendant

Lilly (document 42) and discussed further in a legal memo filed

by the plaintiffs (document 67), this issue is whether the law of

New Hampshire or that of Vermont should be applied in this case.

Because the question is not "all or none", the court rules that,

as to some aspects of the case, New Hampshire law will apply, and

as to other aspects of the case, Vermont law will apply.[1]

In this medical negligence action, the Estate of Clayton Fegan and Clayton Fegan's widow, Joyce Fegan, suing individually, seek recovery of damages from the defendants Brattleboro Memorial Hospital (BMH) and Orthopedics and Sports Medicine of Southern Vermont and A. Douglas Lilly, M.D. It appears that at all relevant times the Fegans were New Hampshire residents and that the decedent's will was executed in and is being probated in New Hampshire. At all relevant times, the defendants were residents of the state of Vermont.

In August of 1993, while employed in Vermont, Mr. Fegan sustained a work-related knee injury, for which he sought treatment from defendant Lilly. The doctor ultimately performed arthroscopic surgery, and while subsequently undergoing recuperative physical therapy at BMH, Mr. Fegan deceased, allegedly from a deep venous thrombosis (DVT). Workers' compensation payments have been made to his widow pursuant to the laws of Vermont.

As New Hampshire is the forum state, its choice-of-law rules

------

[1]Under the doctrine of depecage, different substantive issues in a tort case may be resolved under the laws of different states where the choices influencing decisions differ. LaPlante v. American Honda Motor Co., 27 F.3d 731, 741 (1st Cir. 1994).

are applicable to this dispute.[2]  The New Hampshire courts consider (1) predictability of results; (2) maintenance of reasonable orderliness and good relationship among the states in our federal system; (3) simplification of the judicial task; (4) advancement by the court of its own state's governmental interest rather than those of other states; and (5) the court's preference for what it regards as the sounder rule of law.  Ferren v. General Motors Corp., 137 N.H. 423, 425, 628 A.2d 265, 267 (1993) (citing Clark v. Clark, 107 N.H. 351, 354-55, 222 A.2d 205, 208-09 (1966)).

The court finds that, upon analysis of these choice-influencing considerations, the rule to be here applied is that the law of Vermont will govern the liability aspects of this litigation, while the law of New Hampshire will govern the damage aspects of the case.

Basically relating to consensual transactions, the predictability of results factor protects the justifiable expectations of the parties, assuring uniformity of decision, regardless of forum.  Ferren, supra, 137 N.H. at 426, 628 A.2d at 267.  Emphasizing the importance of applying to the dealings of the parties the law on which they agreed to rely at outset, this

---

[2]A federal court sitting in diversity must apply the conflict-of-law rules of the state in which it sits.  LaPlante, supra note 1, 27 F.3d at 741 (citations omitted).

3

factor is better met by applying Vermont law to liability, where the employment relationship, the injury, and the alleged negligence all took place. On the other hand, a New Hampshire-probated estate, the beneficiary of which will be protected under the New Hampshire law, militates in favor of the holding here made that the law of damages be determined under New Hampshire rules.[3]

The consideration as to the maintenance of reasonable orderliness and good relationship among the states again requires application of Vermont law to the liability aspects of the claim. Here, all aspects of the alleged negligence causative of Mr. Fegan's death occurred in Vermont. On the other hand, all factors concerning the composition and distribution of his estate are situate in New Hampshire, the wrongful death statute of which permits distribution of its benefits in accordance with the provisions of decedent's will and is therefore the sounder rule of law. Estate of Wood, 122 N.H. 956, 958, 453 A.2d 1251, 1252 (1982).

Turning to the consideration of simplification of the judicial task, it is obvious that application of the law of

---

[3]For example, Mr. Fegan's will expressly excluded his children from any benefits, leaving all to his widow. Application of the Vermont wrongful death statute would undermine this clearly expressed intent of the testator.

either New Hampshire or Vermont to the issues before the court is not so difficult an undertaking as to outweigh opposing considerations. <u>Ferren</u>, <u>supra</u>, 137 N.H. at 427, 628 A.2d at 268. Again, for reasons hereinabove outlined, Vermont law should be applied to the liability aspects of the case and New Hampshire law will be applied to the damage aspects of the case.

As to advancement of the forum's governmental interests, both New Hampshire and Vermont have in place rules concerning liability and damage aspects of this case, and while the liability rules do not differ markedly, the damage rules do differ. Again, this consideration militates in holding to application of Vermont law on liability and New Hampshire law on damages. The final consideration for the sounder rule of law does not require any diversion from the holdings hereinabove made. The law of Vermont, which has a substantial concern with the liability aspects of the case, gives it an overriding interest in those circumstances, while the interest of New Hampshire in the damage aspects of the claims tips the balance in its favor on such aspect.

Accordingly, for the reasons hereinabove outlined, the court holds that the law of Vermont will be applied to the liability aspects of the case, and the law of New Hampshire will be applied to the damage aspects of the case.

5

## 2. Defendants' Motions in Limine to Preclude Plaintiff's Recovery for Loss of Consortium (documents 41, 53)[4]

Plaintiff Joyce Fegan seeks to recover for loss of consortium. Defendants contend that recovery for this element of damages is limited to the temporal period between Mr. Fegan's date of injury and date of death. The plaintiff objects. Documents 59, 60.

As the court has previously ruled, the law of New Hampshire will be applied to the damage aspects of this case. The New Hampshire statute provides in relevant part, "In a proper action, . . . a wife . . . is entitled to recover damages for loss or impairment of right of consortium, whether caused intentionally or by negligent interference." New Hampshire Revised Statutes Annotated (RSA) 507:8-a (Supp. 1995). This statute has been interpreted to limit a wife's recovery for loss of consortium to the temporal period "from the time of her husband's injury to his death." Archie v. Hampton, 112 N.H. 13, 17, 287 A.2d 622, ___ (1972).

Accordingly, the court grants the defendants' motions to the extent that recovery for loss of consortium will be limited for the temporal period set forth by the New Hampshire court, and the

---

[4]Document 41 is the motion filed by the defendant Lilly. Document 53 is the motion filed by the defendant BMH.

jury will be so instructed.


3.  Defendants' Motions to Dismiss Plaintiff's Claim for Negligent Infliction of Emotional Distress (documents 39, 51)[5]

Counts IV, V, and VI of the complaint seek recovery for emotional distress allegedly suffered by plaintiff Joyce Fegan. The defendants move to dismiss these claims, and the plaintiff objects.  Documents 63, 66.

The plaintiff's objection, that this motion is untimely, has considerable merit.  Defendants rely on the deposition of plaintiff to support the motion, and that deposition was taken in early November of 1995, well in advance of the January 8, 1996, deadline for dispositive motions.

The law which will be applied on this issue is set forth in Corso v. Merrill, 119 N.H. 647, 406 A.2d 600 (1979).  The court believes, however, that it is better to hear the plaintiff's evidence on this damage claim and rule on its viability at the close of plaintiff's case.

Accordingly, the court will defer ruling on the motions to dismiss the claims for emotional distress until the conclusion of the plaintiff's case in chief.  However, there is to be no

_____

[5]Document 39 is the motion filed by the defendant Lilly. Document 51 is the motion filed by the defendant BMH.

7

mention of such claim in the opening statements of counsel.

## 4. Defendants' Motions to Exclude Evidence of Hedonic Damages (documents 40, 50)[6]

Broadly defined as the value of the lost pleasures of life, hedonic damages involve a measure of the loss of the pleasures of life which is separate from the economic productive value that the decedent would have possessed had he not died. Sterner v. Wesley College, Inc., 747 F. Supp. 263 (D. Del. 1990) (internal quotations and citation omitted). The defendants here contend that plaintiff should not be allowed to claim and recover hedonic damages. The plaintiff objects. Documents 62, 65.[7]

As plaintiff correctly points out, each judge of this court has ruled that damages for loss of enjoyment of life are available under the New Hampshire wrongful death statute, RSA 556:12. Raymond v. Raymond Corp., No. 88-139-D (Oct. 15, 1990, Devine, J.); Lebeau v. Dartmouth College, No. 90-169-JD (Apr. 22,

---

[6]Document 40 is the motion filed by defendant Lilly. Document 50 is the motion filed by defendant BMH.

[7]Document 62 is plaintiff's objection to the motion of BMH which seeks to preclude the claim for lost enjoyment of life. Document 65 is plaintiff's objection to the defendant Lilly's motion which seeks to preclude the claim for hedonic damages. The court considers the terms "hedonic damages" and "lost enjoyment of life" to by synonymous. See Sterner v. Wesley College, supra.

8

1993, DiClerico, C.J.); <u>Buchanan v. Westinghouse Elec. Corp.</u>, No. 90-370-B (Aug. 17, 1993, Barbadoro, J.); <u>Geratowski v. Family Health Center, P.A.</u>, No. 91-31-M (Apr. 8, 1994, McAuliffe, J.).

It follows that the plaintiff's objections must be and they are herewith sustained and the defendants' motions are herewith denied.

### 5. Motion of Defendant BMH to Preclude Recovery for Loss of Household Services (document 52)

Pointing out that the term "consortium" includes the right to a husband's "service", <u>Brann, Adm'x v. Exeter Clinic</u>, 127 N.H. 155, 161, 498 A.2d 334, 338 (1985), defendant BMH argues that to allow recovery for loss of household services would be to permit the plaintiff to recover duplicative damages. The plaintiff objects. Document 64.

The argument of the defendant BMH overlooks that under the applicable New Hampshire wrongful death statute, RSA 556:12, the loss of household services is an asset of the decedent's estate, and is thus recoverable for the period from death through life expectancy. <u>Kennett v. Delta Air Lines, Inc.</u>, 560 F.2d 456, 458 (1st Cir. 1977). As consortium, including such "service" as was rendered therein, is limited to the period between injury and death, there would be no duplicative or double recovery. The

defendant's motion is accordingly denied.

6.  The Motion of Defendant BMH to Preclude Recovery for
Vicarious and Joint Enterprise Liability (document 49)

On or about July 1990, defendants Douglas Lilly and BMH
entered into an "agreement for management and administration."
Relying on the terms of this document, BMH moves to exclude
plaintiff's claim, set forth in Counts X and XI of the amended
complaint, from consideration by the jury.  Plaintiff objects.
Document 61.

Not only is this motion untimely, as pointed out by the
plaintiff, but examination of the agreement upon which BMH relies
satisfies the court that the issues of apparent agency and
possibly joint venture are issues of fact which must be
determined by the jury.

Under the agreement, BMH provides clerical accounting and
nursing personnel for Dr. Lilly, with such persons remaining
employees of the hospital; provides supplies for the doctor's
use; provides him an office on hospital grounds; does his
billing, with the requirement that he endorse all payments over
to the hospital for processing; has the sole authority to
establish the doctor's fees; must perform all accounting and
marketing duties for the doctor; provides office supplies and

10

laundry services; receives 26 percent of all monthly revenues of the doctor; and provides the doctor with a professional income of $240,000.

The fact that the agreement contains a disclaimer of the relationship between the parties does not necessarily foreclose the finding of a vicarious relationship, as such express avowals are immaterial when inconsistent with realities of the arrangement. Rule v. New Hampshire-Vermont Health Serv., 477 A.2d 622, 624 (Vt. 1984). And an apparent agency is initiated by the manifestation of the principal to a third party who reasonably believes that the other individual is the agent. Kimco Leasing v. Lake Hortonia Properties, 640 A.2d 18, 20 (Vt. 1993).

In short, fairly viewed, the agreement does not serve to bar the claim here made by plaintiff that Dr. Lilly was an apparent agent of or engaged in a joint venture with the defendant BMH. Accordingly, the defendant's motion must be and it is herewith denied.


7.  Conclusion

For the reasons hereinabove outlined, the court has ruled that the law of Vermont is to be applied to the liability aspects of this case, and the law of New Hampshire is to be applied to

the damage aspects of this case.

The court, applying New Hampshire law to the claim for loss of consortium, has granted the defendants' motions (documents 41, 53) to limit the temporal period during which consortium damages might be recovered to that period between the injury of the decedent and his death.

The court has deferred ruling until the close of plaintiff's case in chief on the defendants' motions to deny plaintiff's claims for negligent infliction of emotional distress. Documents 39, 51.

Applying the law of New Hampshire, the court has denied the defendants' motions to exclude the claim of hedonic damages. Documents 40, 50.

The court has denied the motion of defendant BMH to preclude recovery for the loss of household services. Document 52.

The court has ruled that the issue of vicarious liability of the defendant BMH for the alleged negligent acts of the defendant Lilly is a factual issue which is to be submitted to the jury and has accordingly denied the BMH motion to preclude recovery on that issue. Document 49.

The court is now hopeful that the case can go forward to final resolution by medium of jury trial.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

November 12, 1996
cc: Mark A. Abramson, Esq.
    Peter W. Mosseau, Esq.
    Robert M. Larsen, Esq.